## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ARMIS HARRIS TUTRIX ON
BEHALF OF HER MINOR CHILD DCJH      CIVIL ACTION

VERSUS                                          NO.   20-680-JWD-RLB

JEFF TRAVIS, ET AL.

## RULING AND ORDER

This matter comes before the Court on the *Rule 12(b)(6) Motion to Dismiss Amended Complaint* (Doc. 36) filed by Defendants Sheriff Jeff Travis ("Sheriff Travis"), Deputy Houston Frazee ("Deputy Frazee" or "Frazee"), and Deputy Glen Sims ("Deputy Sims" or "Sims") (collectively, "Defendants"). Plaintiff Armis Harris, Tutrix on behalf of her minor child, DCJH ("Plaintiff"), opposes the motion. (Doc. 43.) Defendants filed a reply. (Doc. 44.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted in part and denied in part.

### I.    Relevant Factual and Procedural Background

This civil rights action arises from a shooting involving law enforcement that occurred in East Feliciana Parish, Louisiana and resulted in the death of Christopher Whitfield ("Decedent" or "Whitfield"). (*See* Doc. 33.) The following factual allegations are taken from the *Plaintiff's First Amended Complaint for Damages* ("Amended Complaint"). (*Id.*) They are assumed to be true for purposes of this motion. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff initiated this action on behalf of her minor child, DCJH; DCJH is also the minor child of Whitfield. (Doc. 33 at ¶ 5.) Defendants are Jeff Travis, the Sheriff of East Feliciana Parish;

Glen Sims, an East Feliciana Parish Sheriff's Office Deputy; and Houston Frazee, an East Feliciana Parish Sheriff's Office Deputy. (*Id*. at ¶¶ 6–7.)[1]

On October 14, 2019, at 1:50 a.m., the East Feliciana Parish emergency communications dispatch received a call that a security alarm went off at a convenience store in Ethel, Louisiana. (*Id*. at ¶ 12.) Deputies Sims and Frazee were dispatched to the store. (*Id*. at ¶ 13.)

Frazee was the first to arrive on-scene, where he observed Whitfield leaving the area. (*Id*.) Frazee ordered Whitfield to stop moving, but Whitfield started running. (*Id*.) As Sims pulled up to the scene, Whitfield continued running past his patrol car. (*Id*. at ¶ 14.) Sims then exited his patrol car with his firearm drawn. (*Id*. at ¶ 15.) Sims observed Frazee with his firearm drawn running after Whitfield while commanding Whitfield to stop. (*Id*.) As Whitfield continued running from the Deputies, Sims fired two shots at Whitfield, striking Whitfield in the right mid-back. (*Id*.) Whitfield died at the scene. (*Id*. at ¶ 16.)

> According to the Amended Complaint:
>
> Decedent Whitfield did nothing to justify Deputy SIMS conduct. Whitfield did not have any weapons in his hands; there was no struggle with the deputies; he did not reasonably pose a threat to Deputy SIMS or anyone else because he was running away from the officers with his back to the deputies that would justify the use of deadly force on a fleeing victim. The deputies had no cause to believe that the decedent posed a threat of serious physical harm because SIMS stated in his narrative report that "when he caught up to him, he placed his hand on Whitfield's back, then brought his firearm upward to holster." Deputy SIMS['] use of force was clearly unreasonable; namely, Deputy FRAZEE who was also present on the scene did not feel the need to fire a single shot.

(*Id*. at ¶ 36.) The Amended Complaint further states that Sims' use of excessive force against Whitfield was a violation of the East Feliciana Parish Sheriff's Office's ("EFPSO") policy prohibiting use of unnecessary force or violence. (*Id*. at ¶ 44.)

---

[1] The Amended Complaint also names three unknown insurance companies and XYZ deputies as defendants in this case. (*See* Doc. 33 ¶¶ 8–10.) Those defendants are not parties to the instant motion, however.

Plaintiff asserts that Frazee and Sims "fabricated a completely false account of the shooting/killing of decedent Whitfield." (*Id.* ¶ 32.) In the Amended Complaint, Plaintiff alleges:

> In SIMS'[] East Feliciana Sheriff's Office narrative report dated October 16, 2019, he made a . . . false statement in an attempt to justify the shooting of decedent Whitfield that his firearm fired cartridge case was still chambered and that a malfunction must have occurred. However, on October 25, 2019, Forensic Scientist Chelsee Richardson released a scientific analysis report that "the firearms examination showed that no malfunctions were observed on the firearm and that the bullets recovered from decedent Whitfield's body at autopsy and the cartridge cases both matched the ruger p-94 of Deputy Sims."

(*Id.*) Plaintiff further alleges that Frazee falsely stated he saw Sims catch up with Whitfield, even though Whitfield "was farther ahead of both Frazee and Sims when Sims got out of his car and started chasing Whitfield. (*Id.* at ¶ 34.) Additionally, Sims and Frazee fabricated that Whitfield was holding something in his hand while running. (*Id.* at ¶ 35.) Yet this version of events is contradicted by the convenience store's surveillance footage, Plaintiff avers, which captured Whitfield running from the Deputies with nothing in his hand. (*See id.* at ¶¶ 30, 35.)

Plaintiff makes allegations against Sheriff Travis that reflect on Sims' background and purported propensity for violence. (*Id.* ¶¶ 37–44.) Specifically, the Amended Complaint details Sims' "legacy of prior complaints and a prior disciplinary history involving assault[] and battery on others while employed by the [EFPSO] dating back to 1992-2016." (*Id.* at ¶ 37.) The Amended Complaint also cites to an excessive force incident involving another EFPSO deputy. (*See id.* at ¶¶ 45, 47.)

Plaintiff claims that the EFPSO "had a custom of firing and hiring individuals with dangerous propensities," such as Sims (*id.* at ¶ 38), and that Sheriff Travis "failed to adopt a policy against the rehiring of" such individuals (*id.* at ¶ 40). Despite his knowledge of Sims' history, Plaintiff alleges that Sheriff Travis took no steps "to train, supervise, or monitor" Sims, ultimately leading to Whitfield's death. (*Id.* at ¶ 43.) Plaintiff further alleges various EFPSO policies,

3

practices, and customs that Sheriff Travis ordered or otherwise acquiesced in constitute "a pattern of constitutional violations" by deliberate plan, deliberate indifference, or gross negligence. (*Id*. at 20, ¶ 46.)

On August 9, 2020, Plaintiff, on behalf of her minor child DCJH, filed the Amended Complaint, asserting a wrongful death and survival action under 42 U.S.C. § 1983 against Sheriff Travis, Frazee, and Sims. (*See* Doc. 33.) Defendants are sued in their individual and official capacities. (*Id*. at ¶¶ 6–7.) Specifically, Plaintiff asserts claims for excessive force in violation of Whitfield's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution. (*Id*. at ¶¶ 49–57.) Plaintiff similarly claims that Defendants violated Whitfield's right to be free from excessive force under Article I, § 20 of the Louisiana Constitution. (*Id*. at ¶ 58.) Additionally, Plaintiff asserts claims against Defendants for assault, battery, negligence, and *respondeat superior* under Louisiana law. (*See* Doc. 33 at 23–28.) Defendants now move for dismissal of Plaintiff's Amended Complaint for failure to state a claim.

## II.    Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

4

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);] *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

### III. Discussion of § 1983 Official Capacity Claims

#### A. Parties' Arguments

##### 1. Defendants' Original Memorandum (Doc. 36-1)

###### a. Sheriff Travis

Defendants first argue that Plaintiff's § 1983 municipality liability claim against Sheriff Travis in his official capacity for implementation of constitutionally deficient policy or custom

should be dismissed. (*See* Doc. 36-1 at 5–7.) Defendants cite to Fifth Circuit case law stating that

to prevail on such a claim, a plaintiff must show that "(1) an official policy (2) promulgated by the

municipal policymaker (3) was the moving force behind the violation of a constitutional right."

(*Id*. at 6 (citing *Pena v. City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018)).) According to

Defendants, Plaintiff has not alleged that Sheriff Travis implemented a policy or custom that

subjected people to unreasonable use of force, or that he "acted with deliberate indifference." (*Id*.

at 6–7.) Defendants further note that "Sheriff Travis had in force a policy that prohibited the use

of unconstitutional excessive force," even though the Amended Complaint alleges the policy was

not followed in this case. (*Id*. at 7.)

Defendants also attack as insufficient Plaintiff's allegations regarding Sheriff Travis's

failure to train, supervise, hire, and retain. (*Id*.) Defendants argue that this claim fails because

Plaintiff has not pled any factual allegations to support that Sheriff Travis's training was deficient.

(*Id*.) Nor has Plaintiff pled a causal connection between the alleged failure to train or supervise

and the violation of Whitfield's rights. (*Id*.) Plaintiff's failure to train and supervise allegations

also fail on the deliberate indifference prong, Defendants argue, because Plaintiff's reference to an

earlier excessive force incident by another deputy is insufficient to state a pattern of similar

constitutional violations by untrained employees. (*Id*. at 8.)

Defendants argue that Plaintiff's allegations that Sheriff Travis's employee selection and

retaining process violated Whitfield's constitutional rights are conclusory and must also fail

because (1) "there is no strong connection between Dy. Sims' background and the constitutional

deprivation sought to be redressed"; and (2) Plaintiff "failed to plead facts that could plausibly

lead to the conclusion that Sheriff Travis was aware that Dy. Sims was 'highly likely' to inflict

deadly force upon Whitfield." (*Id*. at 9.)

Finally, Defendants reject Plaintiff's allegations that Sheriff Travis condoned and encouraged officers to violate people's rights by referencing one excessive force case involving another deputy who was subsequently promoted as conclusory. (*Id*.) Defendants note that the Amended Complaint does not state that Sheriff Travis ratified, condoned, or endorsed the other deputy's action in that particular case and, therefore, Plaintiff fails to state a claim for ratification or endorsement. (*Id*.)

#### b. Deputy Frazee and Deputy Sims

Defendants argue that Plaintiff's § 1983 claims asserted against Deputies Frazee and Sims in their official capacities should be dismissed because the Amended Complaint does not allege "that they were or are policy and/or decision maker[s]." (*Id*. at 10.) Further, since the Amended Complaint clarifies that the "General Allegations on Policy and Practice" are against Sheriff Travis and the EFPSO, Defendants maintain that "Plaintiff has abandoned the official policy claim" against Deputies Frazee and Sims. (*Id*. (referencing Doc. 33 at 14, ¶ 46).)

#### 2. Plaintiff's Opposition (Doc. 43-1)

#### a. Sheriff Travis

In opposition, Plaintiff asserts that she has sufficiently stated a *Monell* claim against Sheriff Travis. (*See* Doc. 43-1 at 9.) In support of this assertion, Plaintiff points to the allegations in the Amended Complaint pertaining to Sims' employment history. (*See id*.) Specifically, Plaintiff contends: "Given the troubled (to say the least) law enforcement career of Deputy Sims, the amended complaint sufficiently alleges that Sheriff Travis failed to adopt a policy of not rehiring deputies having a history of excessive force . . ., and that, knowing Sims' history of violence, Travis failed to train Sims to prevent him from continuing to perform acts of successive [sic] force." (Doc. 43-1 at 9 (citing Doc. 33 at ¶ 40).) Plaintiff also references the allegations of the

Amended Complaint detailing Sims' "violent propensities" and the number of times he was "fired and rehired" by the EFPSO. (*Id.* (referencing Doc. 33 at ¶¶ 37–43).) Plaintiff thus contends that these allegations are "sufficient to raise the *Monell* claim beyond the realm of speculation and into the realm of plausibility." (*Id.*)

### 3. Defendants' Reply (Doc. 44)

#### a.  Sheriff Travis

In response, Defendants maintain that all § 1983 claims against Sheriff Travis in his official capacity should be dismissed. (*See* Doc. 44 at 2.) First, Defendants note that "Plaintiff's Amended Complaint, like its predecessor, contains only conclusory allegations and improper legal conclusions of municipal liability without facts that could plausibly support the causation element of such a claim or deliberate indifference on the part of Sheriff Travis." (*Id.*)

As to Plaintiff's *Monell* claim, Defendants reiterate that she has not plausibly alleged that Sheriff Travis implemented a policy or custom that subjected people to excessive force, or that he acted with deliberate indifference. (*Id.*) Defendants also re-urge that Plaintiff has not shown that Sheriff Travis was aware that Sims was "highly likely" to inflict deadly force upon Whitfield, considering that "[n]one of the alleged employment history involved Dy. Sims using force on a crime suspect." (*See id.* at 3.)

Defendants point out that Plaintiff's opposition did not substantively address Defendants' ratification and endorsement arguments regarding Sheriff Travis. (*Id.* at 4.) Defendants add that these claims fail because Plaintiff has not alleged an "extreme factual situation" sufficient to support such claims. (*Id.*)

### b. Deputies Frazee and Sims

Finally, Defendants note that Plaintiff's opposition did not address Defendants' arguments in support of dismissal of the official capacity claims against Sims and Travis. (*Id*. at 1.) Moreover, dismissal of these claims is appropriate based on Plaintiff's failure to allege that Frazee and Sims were policy or decision makers at the time of the events sued upon, according to Defendants. (*Id*.)

### B. Applicable Law

### 1. Official Capacity Claims Generally

"An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Romain v. Governor's Office of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations omitted). At the outset, it should be noted that "a federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under . . . § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993).

"Section 1983 offers no *respondeat superior* liability." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002). "Municipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . .'" *Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.C.*, 436 U.S. 658, 694 (1978)). That is, "[a] municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir.

2001)). "To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). A plaintiff must allege "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541–42 (quoting *Pineda*, 291 F.3d at 328).

### 2. Official Policy

"A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir.), *on reh'g,* 739 F.2d 993 (5th Cir. 1984). "Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Id*.

With respect to practices and customs, "[a] pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster*, 735 F.2d at 841). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'"

*Id.* (quoting *Webster,* 735 F.2d at 842). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* at 850–51 (quoting *Piotrowski,* 237 F.3d at 582 (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' " *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)).

"A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Hous.,* 863 F.2d 1180, 1184 (5th Cir. 1989)).  Thus, in *Pineda*, the Fifth Circuit held that eleven instances of warrantless entry did not support a pattern of unconstitutional warrantless entry. *Pineda*, 291 F.3d at 329. In *Peterson*, the Fifth Circuit found that twenty-seven complaints of excessive force between 2002 and 2005 were insufficient to constitute a pattern, as almost all of the incidents involved small crimes, and the police force was large. *Peterson*, 588 F.3d at 851; *see also Skinner v. Ard*, 519 F. Supp. 3d 301, 313 (M.D. La. 2021).

### 3. Failure-to Claims and Deliberate Indifference

To state a claim for a claim against a municipality for failure to train, "[a] plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544 (citation omitted). "All failure to act claims, such as . . .  failure to train [or] supervise . . . involve the same basic elements: inadequacy, deliberate indifference, and causation." *Snow v. City of El Paso*, 501 F. Supp. 2d 826, 833 n.5 (W.D. Tex. 2006) (citations omitted).

"The failure to provide proper training may fairly be said to represent a policy for which

the city is responsible, and for which the city may be held liable if it actually causes injury." *Valle*, 613 F.3d at 544 (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000)). "In resolving the issue of a city's liability, the focus must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Additionally, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).

Failure to adopt a policy may also give rise to a § 1983 claim for municipal liability. *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 217 (5th Cir. 1998). That failure must amount to a conscious and intentional choice by the municipality's policymaker. *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). "[F]ailure to adopt a policy does not constitute such an intentional choice unless it can be said to have been 'deliberately indifferent.'" *Id.*

"[D]eliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff "must show that 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle*, 613 F.3d at 547 (quoting *City of Canton*, 489 U.S. at 390). In *Connick*, the Supreme Court summarized this standard as follows:

> Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's " 'policy of inaction' " in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." A less

stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities . . . . *see also Pembaur, supra,* at 483, 106 S. Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"— necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick*, 563 U.S. at 61–62 (citations and quotations omitted).[2]

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61 (citation omitted). The Supreme Court advises that the heightened standard of fault and causation for these claims is intended to prevent federal courts from engaging "in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *City of Canton*, 489 U.S. at 392 (internal citations omitted).

### 4. Ratification/Endorsement

When an authorized policymaker approves a subordinate's decision and the basis for it, such ratification is chargeable to the government entity. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). However, the Fifth Circuit has limited the theory of ratification to "extreme factual situations." *Peterson*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*,

---

[2] A showing "of deliberate indifference is difficult, although not impossible, to base on a single incident." *Valle*, 613 F.3d at 549 (citation omitted). "The 'single incident exception' is extremely narrow; a plaintiff must prove that the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.* (citations and quotations omitted).

142 F.3d 791, 798 (5th Cir. 1998) (finding that that the shooting of a fleeing suspect "hardly [rose] to" such a level, "particularly given the absence of evidence suggesting a culture of recklessness in the NOPD")).

Additionally, the Fifth Circuit has "explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Id.* (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986)); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) ("Good faith statements made in defending complaints against municipal employees do not demonstrate ratification.").

In *Peterson*, the Fifth Circuit explained:

> In *City of St. Louis v. Praprotnik,* a case on which [plaintiff] relies [and which is the basis of ratification liability], the Supreme Court emphasized that "[s]imply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy...." 485 U.S. 112, 130, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988). Additionally, "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority...." *Id. See also Kibbe v. City of Springfield,* 777 F.2d 801, 809 n.7 (1st Cir. 1985) ("The [district] court suggested that the City had ratified defendant Perry's action by clearing him and finding that he had acted in accordance with the police department's policies. We are unconvinced that a failure to discipline Perry or other officers amounts to the sort of ratification from which a jury properly could infer municipal policy.").

588 F.3d at 848 n.2. *See also Milam v. City of San Antonio,* 113 F. App'x 622, 627 (5th Cir. 2004) (quoting to the same propositions from *Praprotnik* and explaining that "[s]uch limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior*, which theory *Monell* does not countenance"). Furthermore, the Fifth Circuit has held that "[i]t is nearly impossible to impute lax disciplinary policy to [a governmental entity] without showing a pattern of abuses that transcends the error made in a single case." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (quoting *Piotrowski*, 237 F.3d at 582) (affirming the district court's dismissal of the plaintiff's excessive force claim against a police department).

### C.  Analysis

#### 1. Sheriff Travis

In short, the Court will dismiss the official capacity claims against Sheriff Travis. Even assuming the Amended Complaint had sufficiently alleged the adoption of a policy by Sheriff Travis, Plaintiff still has not shown that Sheriff Travis acted with deliberate indifference, either generally or with respect to her failure-to claims.

#### a.  *Monell* Policy Claim

Plaintiff largely attempts to establish *Monell* liability based on alleged patterns and practices of the EFPSO that were so widespread and persistent as to constitute a custom. Plaintiff relies on Sims' history of prior complaints and disciplinary action from 1992-2016, along with a single lawsuit against another EFPSO deputy for allegedly using excessive force, in an effort to establish the EFPSO's policy of subjecting people to excessive force. While the conduct referenced in the Amended Complaint certainly raises questions about Sims' fitness as a police officer and the propriety of continually rehiring him, these instances of misconduct do not suffice to state a viable claim for *Monell* liability based on a custom or practice. Specifically, Plaintiff fails to allege sufficiently numerous and similar prior incidents to meet the requirement of a custom. *See Peterson*, 588 F.3d at 851 (finding twenty-seven complaints of excessive force in three years insufficient); *Prince v. Curry*, 423 F. App'x 447, 451 (5th Cir. 2011) (holding that a plaintiff failed plausibly to plead a persistent practice of misclassifying defendants' sex-offender status when he pointed to "only one or, at most, two other similarly situated defendants"). Thus, even taking into account the relatively small number of deputies on the EFPSO force, Plaintiff has failed to allege a sufficiently large number of similar prior incidents. *See Skinner*, 519 F. Supp. 3d at 313.

### b.  Failure-to Claims

Plaintiff's claims for failure to train, supervise, hire, and/or retain also fail. The Amended Complaint includes several "failure-to" allegations against Sheriff Travis, including failure to properly train and supervise officers (*See* Doc. 33 at 15, 18–19, ¶¶ 46(b), 46(h)), as well as the policy of selecting and retaining officers with propensities for violence and excessive force (*id*. at 17, ¶ 46(f)). Yet none of these allegations explain Sheriff Travis's role or how the referenced training programs were otherwise defective. Without more, Plaintiff's allegations of inadequate training, supervision, and hiring are insufficient. *See Goodman*, 571 F.3d at 395. Plaintiff's Amended Complaint similarly fails to demonstrate deliberate indifference by alleging a "pattern of similar constitutional violations by untrained employees." *See Connick*, 563 U.S. at 62. Finally, while Plaintiff has asserted in a conclusory manner that Sheriff Travis failed to implement adequate policies (Doc. 33 at 14–19, ¶ 46), she has not properly alleged that this was an intentional choice by Sheriff Travis or the result of his deliberate indifference.

### c.  Ratification Claims

Plaintiff's opposition failed to respond to Defendants' arguments regarding ratification and endorsement. And so, because Plaintiff failed to meaningfully oppose Defendants' motion on her § 1983 municipality claim against Sheriff Travis for ratification and endorsement, the Court will grant Defendants' motion on this issue on the grounds of waiver. *See JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (finding that the operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that policy exclusion could apply because plaintiff failed to oppose insurer's argument on the issue). The Court will therefore dismiss

Plaintiff's municipal liability claim against Sheriff Travis based on theories of ratification and endorsement.

## 2. Deputy Frazee and Deputy Sims

Plaintiff's opposition also failed to respond to Defendants' arguments regarding her official capacity claims against Sims and Frazee. Consequently, because Plaintiff failed to substantively oppose Defendants' motion on this issue, the Court will grant Defendants' motion on these claims on the grounds of waiver. *See JMCB, LLC*, 336 F. Supp. 3d at 634; *Apollo Energy, LLC*, 387 F. Supp. 3d at 672. Plaintiff's § 1983 claims asserted against Frazee and Sims in their official capacities are therefore dismissed.[3]

## IV.    Discussion of § 1983 Individual Capacity Claims

### A.  Parties' Arguments

#### 1. Defendants' Original Memorandum (Doc. 36-1)

Defendants argue that the § 1983 claims Plaintiff asserts against them in their individual capacities should be dismissed because Plaintiff has failed to plead sufficient facts to overcome their qualified immunity. (Doc. 36-1 at 10.)

##### a.  Sheriff Travis

With respect to Sheriff Travis, Defendants contend that the Amended Complaint lacks any allegation plausibly suggesting that he used objectively unreasonable force in violation of Whitfield's constitutional rights. (*Id*. at 12.) Specifically, Defendants assert that Plaintiff failed to

---

[3] Even if Plaintiff had not waived opposition to Defendants' motion for dismissal of her § 1983 official capacity claims against Frazee and Sims, the Court would still find that these claims are subject to dismissal pursuant to Rule 12(b)(6). As Defendants correctly note in their brief (Doc. 36-1 at 10), Plaintiff has not alleged that Frazee and Sims are policymakers, as required to establish liability for an official capacity claim. *See Spears v. Gautreaux*, No. 17-105, 2020 WL 3271993, at *20 (M.D. La. June 17, 2020) (deGravelles, J.) ("Under Louisiana law, it is clear that 'the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office.'").

allege that Sheriff Travis was present during the encounter; that he was personally involved in the encounter; or that he used unconstitutional force against Whitfield. (*Id*.)

### b.  Deputy Frazee

Defendants similarly argue that the Amended Complaint lacks any allegation that Frazee used objectively unreasonable force in violation of Whitfield's constitutional rights. (*Id*. at 12–13.) To the contrary, Frazee neither used any force nor inflicted any injury on Whitfield, according to the Amended Complaint. (*Id*. at 13.) Additionally, Defendants argue that Plaintiff has failed to state a plausible claim against Frazee for bystander liability because she has not plead that Frazee knew Sims was violating Whitfield's rights; that Frazee had a reasonable opportunity to prevent the harm; that Frazee chose not to act; or that Frazee acquiesced in the violation. (*Id*. at 13–14.)

### c.  Deputy Sims

Defendants contend that Plaintiff has not met her burden of pleading sufficient facts to overcome Sims' qualified immunity on the excessive force claim. (*Id*. at 14.) Defendants represent that, under Fifth Circuit case law, "[i]t is clearly established that a shooting without the requisite intent to use deadly force does not itself violate a suspect or decedent's constitutional rights." (*Id*.) Yet "Plaintiff acknowledges that Dy. Sims did not intend to use deadly force and recognizes that Dy. Sims believes that his 'firearm fired cartridge case was still chambered and that a malfunction must have occurred,'" Defendants argue. (*Id*.) Defendants thus contend that Sims' "alleged accidental use of force while attempting to effectuate the arrest of Whitfield was not unreasonable" and, as a result, Sims is entitled to qualified immunity. (*Id*. at 15.)

### 2. Plaintiff's Opposition (Doc. 43-1)

As to Sims, Plaintiff disputes Defendants' assertion that she acknowledges Sims' use of deadly force was unintentional, or that she recognizes Sims' belief that his firearm malfunctioned.

(Doc. 43-1 at 12.) To the contrary, Plaintiff argues: "Far from accepting Sims' unlikely story that his pistol malfunctioned (twice) and that he had no intent to shoot, Plaintiff clearly presents this story as false and concocted in a desperate attempt to avoid liability." (*Id.* (referencing Doc. 33 at ¶ 32).)

Regarding Sims' entitlement to qualified immunity, Plaintiff first contends that the Amended Complaint "alleges in detail that Sims used excessive force against a non-resisting person who was not a danger either to the officers or to the public," which "constitutes unreasonable use of deadly force under the Fourth Amendment." (*Id.* at 13.) Plaintiff then asserts that the Amended Complaint clearly shows Sims' intent to violate Whitfield's Fourth Amendment right to be free of excessive force. (*Id.*) Specifically, the Amended Complaint alleges:

> (a) there was a generalized alarm, (b) no report of any particular suspect, much less a report linking Whitfield to any crime, (d) (sic) Whitfield ran away from the officers and did not attempt to confront either one, (e) contemporaneous camera evidence showed he was not carrying anything in his hands, much less a weapon, (f) Sims shot Whitfield in the back twice, (g), Sims concocted a false account that his pistol malfunctioned, and (h) Sims and Frazee attempted to concoct a story that would have made Whitfield look dangerous.

(*Id.*) Plaintiff thus submits that she has met her burden in pleading sufficient facts to overcome Sims' qualified immunity on a motion to dismiss. (*Id.*)

### 3. Defendants' Reply (Doc. 44)

#### a.  Sheriff Travis and Deputy Frazee

In response, Defendants point out that Plaintiff failed to substantively address their arguments regarding Sheriff Travis and Frazee's qualified immunity defense in her opposition. (Doc. 44 at 2, 4.) Defendants also maintain that Plaintiff has failed to overcome Sheriff Travis and Frazee's qualified immunity for the same reasons urged in their original memorandum. (*See id.* at 2, 4.)

### b. Deputy Sims

In reply, Defendants re-urge that "Plaintiff has failed to plead facts sufficient to allege a constitutional violation or unreasonable conduct on the part of Dy. Sims." (*Id*. at 5.) Defendants summarize: "Even though Plaintiff disagrees with Dy. Sims, Plaintiff has not pointed to any precedent which places this constitutional question, i.e., where the deputy was attempting to holster his weapon, believed his firearm malfunction[ed], and did not have the requisite intent to use deadly force, beyond debate." (*Id*.) "Dy. Sims alleged accidental use of force while attempting to effectuate the arrest of Whitfield was not unreasonable," Defendants add. (*Id*. at 6.) Because "Plaintiff has failed to plead facts or provide supporting law that Dy. Sims violated clearly established law," Defendants maintain that Sims is entitled to qualified immunity. (*Id*.)

## B. Applicable Law

### 1. Qualified Immunity Generally

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)), *cert denied*, 141 S. Ct. 1058 (2021). "It shields 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Thompson v. Mercer*, 762 F3d 433, 437 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). To rebut a defendant's qualified immunity defense, the plaintiff must demonstrate "(1) that [the defendant] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quoting *District of Columbia v. Wesby*,

138 S. Ct. 577, 589 (2018)), *cert. denied*, 140 S Ct. 388 (2019). "[The Court] can analyze the prongs in either order or resolve the case on a single prong." *Id*. (quoting *Garcia*, 957 F.3d at 600).

### 2. Whether There Was a Violation of Whitfield's Constitutional Rights

"The Fourth Amendment guarantees the right to be free from 'unreasonable searches and seizures.'" *Davis v. Romer*, 600 F. App'x 926, 929 (5th Cir. 2015) (quoting U.S. Const. amend. IV). "Apprehension by the use of deadly force is a seizure." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).

"For the first step" in the qualified immunity analysis, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 336 (5th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable." *Carnaby*, 636 F.3d at 187 (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

Because Decedent's "death was an injury caused by the deadly force employed, . . . the only issue is whether the use of that deadly force was unreasonable." *Id.* "To gauge the objective reasonableness of the force, '[the Court] must balance the amount of force used against the need for force.'" *Id.* at 187–88 (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citation omitted)).

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S., at 8–9, 105 S. Ct., at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure").

*Graham*, 490 U.S. at 396; *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) ("This balancing test 'requires careful attention to the facts and circumstances of each particular case.'" (quoting *Graham*, 490 U.S. at 396)).

"That second factor is the most important: [The Court] must determine whether [Decedent] 'posed an immediate threat to the safety of the officers or others.'" *Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020) (quoting *Graham*, 490 U.S. at 396). "The '[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others.'" *Carnaby*, 636 F.3d at 188 (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)). That is, "[t]he use of deadly force may be proper regardless of an officer's negligence if, at the moment of the shooting, he was trying to prevent serious injury or death." *Id.* (citations omitted).

"[T]he proper inquiry is an *objective* one." *Hudspeth*, 270 F. App'x at 337 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The "Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Id.* (quoting *Devenpeck*, 543 U.S. at 153). Phrased another way, "[t]he 'reasonableness inquiry is objective: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Davis v. Romer*, 600 F. App'x 926, 931 (5th Cir. 2015) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). Thus, the officer's "subjective intent is irrelevant to the reasonableness determination." *Id.*

Further, the Court's "inquiry into reasonableness is fact-specific and 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Carnaby*, 636 F.3d at 188 (quoting *Graham*, 490 U.S. at 396–97).  The Court must review as " 'a reasonable officer on the scene,' and [] 'allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Flores*, 381 F.3d at 399 (quoting *Graham*, 490 U.S. at 396–97).  The Court "cannot allow the 'theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.'" *Malbrough*, 814 F. App'x at 806 (quoting *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994).

### 3. Whether Every Reasonable Officer Under the Circumstances Would Know His Conduct Was Unlawful

As to the second part of the qualified immunity analysis, "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)).

"Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). Thus, for example, the Supreme Court has said that:

> (1) "the reasonableness of an officer's use of force depends, in part, on whether the officer was in danger at the precise moment that he used force" and (2) "if the suspect threatens the officer with a weapon[,] deadly force may be used if necessary to prevent escape, and if[,] where feasible, some warning has been given."

*White*, 137 S. Ct. at 551 (quoting reversed lower court opinion, which in turn quoted, *inter alia*, *Garner*, 471 U.S. at 7, and *Graham*, 490 U.S. 386). "[B]ut 'in the light of pre-existing law the unlawfulness must be apparent,' [and] [f]or that reason, [the Supreme Court has] held that *Garner* and *Graham* do not by themselves create clearly established law outside 'an obvious case.'" *White*, 137 S. Ct. at 552 (citation omitted) (quoting *Brosseau*, 543 U.S. 194, 199 (2004)).

Thus, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela*, 138 S. Ct. at 1153 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). Phrased another way, "[w]hen considering a defendant's entitlement to qualified immunity, [the Court] must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *McLin v. Ard*, 866 F.3d 682, 695 (5th Cir. 2017) (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 696 (quoting *Morgan*, 659 F.3d at 371–72 (internal quotation marks omitted)). "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit

courts are split on the issue, the law cannot be said to be clearly established." *Id.* (quoting *Morgan*, 659 F.3d at 372).

### C.  Analysis

#### 1. Sheriff Travis

Plaintiff's opposition failed to respond to Defendants' arguments regarding Sheriff Travis's entitlement to qualified immunity from her excessive force claim. Consequently, because Plaintiff failed to substantively oppose Defendants' motion on this issue, the Court will grant Defendants' motion on this claim on the grounds of waiver. *See JMCB, LLC*, 336 F. Supp. 3d at 634; *Apollo Energy, LLC*, 387 F. Supp. 3d at 672. Plaintiff's § 1983 excessive force claim against Sheriff Travis in his individual capacity is therefore dismissed.[4]

#### 2. Deputy Frazee

Plaintiff's opposition likewise failed to respond to Defendants' arguments regarding Frazee's entitlement to qualified immunity from Plaintiff's excessive force and bystander liability claims. Consequently, because Plaintiff failed to meaningfully oppose Defendants' motion on this issue, the Court will grant Defendants' motion on these claims on the grounds of waiver. *See*

---

[4]      Even if Plaintiff had not waived this claim, Defendants would still be entitled to dismissal of this claim based on Sheriff Travis's qualified immunity defense. "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted)).
        Here, Plaintiff has not alleged facts demonstrating that Sheriff Travis personally participated in the constitutional violation by Sims. *See Porter*, 659 F.3d at 446. Indeed, Sheriff Travis is not even alleged to have been at the scene when the encounter occurred. Moreover, for the reasons set forth above in its analysis of Plaintiff's official capacity claims against Sheriff Travis, Plaintiff also fails to demonstrate that Sheriff Travis is liable for implementing policies that causally resulted in the claimed constitutional injury.
        Finally, Plaintiff's claim fails for lack of deliberate indifference. Again, Plaintiff wholly fails to allege beyond mere conclusions that Sheriff Travis was aware of facts from which the inference could be drawn that a substantial risk of harm existed for Whitfield, and that he actually drew that inference. *See Goodman*, 571 F.3d at 395. Therefore, Plaintiff has not alleged a constitutional violation by Sheriff Travis to support her § 1983 claim.

*JMCB, LLC*, 336 F. Supp. 3d at 634; *Apollo Energy, LLC*, 387 F. Supp. 3d at 672. Plaintiff's §

1983 excessive force and bystander liability claims asserted against Frazee in his individual

capacity are therefore dismissed.[5]

### 3. Deputy Sims

Having carefully considered the matter, the Court will deny Defendants' motion to dismiss

Plaintiff's § 1983 excessive force claim against Sims in his individual capacity. In short, the Court

finds that Plaintiff has sufficiently pled a Fourth Amendment violation by Sims. Although

Defendants stress that Fifth Circuit case law clearly establishes that "a shooting without the

requisite intent to use deadly force does not itself violate a . . . decedent's constitutional rights"

(Doc. 36-1 at 14), they fail to overcome the well-pleaded factual allegations of the Amended

Complaint supporting the inference that Sims had the requisite culpable intent to use deadly force

during his encounter with Whitfield.

---

[5]    Even if Plaintiff had not waived these claims, the Court would still find that dismissal is warranted based on Frazee's qualified immunity defense. For one, based on the allegations of the Amended Complaint, Frazee was not involved in the use of force that resulted in injury to Whitfield. In fact, Plaintiff does not allege that Frazee used force at any time. Thus, Plaintiff has not stated a viable § 1983 excessive force claim against Frazee.

Moreover, the Court finds that Plaintiff failed to allege a constitutional violation against Frazee for bystander liability. "[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted). "[A]n officer may be liable under § 1983 under [this] theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). However, "[m]ere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability." *Vasquez v. Chacon*, No. 08-2046, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citing *Nowell*, 147 F. Supp. 2d at 507); *see also Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) ("[Plaintiff] concedes that he was harmed by three inmates and that an officer's mere presence, without more, does not give rise to a bystander liability claim."). The officer must have a "reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *See Hale*, 45 F.3d at 919; *Nowell*, 147 F. Supp. 2d at 507 (same); *Vasquez*, 2009 WL 2169017, at *6 (same) (citing *Hale*, *supra*; *Nowell*, *supra*). Here, Plaintiff alleges that Frazee failed to intervene when he "observed [Sims] pull up and get out of his vehicle [and] fire on a fleeing subject." (Doc. 33 at 14, ¶ 46.) This allegation does not show that Frazee had a realistic opportunity to both realize and prevent the claimed excessive force violation by Sims. Thus, Plaintiff has not sufficiently alleged a bystander liability claim against Frazee.

According to the Amended Complaint, Sims stated in his EFPSO report that "his firearm fired cartridge case was still chambered and that a malfunction must have occurred." (Doc. 33 at ¶ 32.) Sims also stated in his report that "when he caught up to [Whitfield], he placed his hand on Whitfield's back, then brought his firearm upward to holster." (*Id*. at ¶ 36.) Yet other factual allegations in the Amended Complaint arguably demonstrate that Sims' narrative of the incident was false. For instance, Sims' claim that his firearm malfunctioned was disproven by the forensic firearms examination, which "showed that no malfunctions were observed on the firearm." (*Id*. at ¶ 32.) Additionally, the Amended Complaint alleges that "Sims and Frazee fabricated that . . . Whitfield was running while holding something in his hand." (*Id*. at ¶ 35.) In fact, the convenience store's surveillance footage captured "Whitfield running from the deputies with nothing in his hand." (*Id*. at ¶ 30.) Based on these allegations, the Court finds that Plaintiff has sufficiently alleged that Deputy Sims had the requisite intent to violate Whitfield's Fourth Amendment rights. Moreover, the Amended Complaint suggests that Sims was not imminently in danger at the time he fired his weapon. Critically, Whitfield was running away from the Deputies while unarmed when he was shot. (*Id*. at ¶ 36.) And Defendants do not argue in their briefs that Sims believed Whitfield posed an immediate threat to anyone.

In sum, viewing the factual allegations of the Amended Complaint in the light most favorable to Plaintiff and considering the totality of the circumstances, Plaintiff has sufficiently alleged that Sims intentionally fired his gun at Whitfield, notwithstanding that his use of deadly force was not justified. Further, when Sims fired the two shots into Whitfield's back, Whitfield did not pose an immediate threat. And every reasonable officer in Sims' position would have known, beyond doubt, that intentionally shooting a fleeing and unarmed potential suspect twice in the back was objectively unreasonable under clearly established law. Thus, Plaintiff has

sufficiently alleged a constitutional violation to support her § 1983 excessive force claim against Sims to withstand dismissal based on the qualified immunity defense.

## V.      Discussion of State Law Claims

### A.  Parties' Arguments

#### 1. Defendants' Original Memorandum (Doc. 36-1)

Preliminarily, Defendants argue that the Court should decline to exercise jurisdiction over Plaintiff's state law claims in accordance with the "Fifth Circuit's general rule." (Doc. 36-1 at 15 (citing *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016)).) Alternatively, they assert that Plaintiff fails to state claims upon which relief can be granted. (*Id*.)

Defendants first contend that Plaintiff's parallel state constitutional excessive force claims against Sheriff Travis, Frazee, and Sims should be dismissed because the Amended Complaint "is void of factual allegations that could plausibly suggest that Sheriff Travis or Dy. Frazee used excessive force against Whitfield. . . ." (*Id*. at 16.) Defendants further argue that Sims' accidental use of force while attempting to arrest Whitfield was not unreasonable. (*Id*.)

Next, Defendants argue that Plaintiff has failed to state a negligence claim against Frazee and Sims under La. Civ. Code art. 2315. (*Id*. at 17.) According to Defendants, Plaintiff's allegation that Sims' actions constitute fault because he violated EFPSO policy is insufficient because a violation of policy is not negligence per se. (*Id*.) Defendants also contend that Plaintiff's negligence claim against Frazee fails because the Amended Complaint is void of any allegation addressing how Frazee's alleged misrepresentation of fact breached any duty of care owed to Whitfield. (*Id*. at 18.)

Defendants argue that Plaintiff's vicarious liability claim likewise fails because "there is no liability to impute to [] Sheriff Travis because . . . there exists no actionable negligent transgressions on the part of Dy. Frazee or Dy. Sims." (*Id*.)

Additionally, Defendants argue that Sheriff Travis is entitled to discretionary immunity from Plaintiff's failure-to claims under La. R.S. § 9:2798.1. (*Id*. at 18–19.) Thus, "[a]ny alleged deficiencies in Sheriff Travis's training, hiring, firing, and supervision is a discretionary function for which liability cannot be imposed against him." (*Id*. at 19.)

Finally, Defendants argue that Plaintiff has failed to state an assault and battery claim against Sims because he lacked the requisite intent. (Id. at 19–20.)

## 2. Plaintiff's Opposition (Doc. 43-1)

In opposition, Plaintiff urges the Court to maintain and exercise supplemental jurisdiction over her state law claims. (Doc. 43-1 at 14.) She then argues that the Amended Complaint, which sufficiently alleges excessive force under federal case law, also sufficiently alleges excessive force under Louisiana law. (*Id*.) Plaintiff contends that she has sufficiently stated negligence claims for the intentional act of Sims (*id*.) and for Frazee being "complicit" in Sims' behavior (*id*. at 16). Plaintiff has also stated a vicarious liability claim against Sheriff Travis, as Deputies Sims and Frazee were in the course and scope of their employment when they committed the alleged negligent acts. (*Id*.) Next, Plaintiff argues that the discretionary exemption set out in La. R.S. § 9:2798.1 does not apply. (*Id*. at 17.) According to Plaintiff, Sheriff Travis was "fully aware" of Deputy Sims' "history and patterns of violating the law" and permitted him to stay on the force any way. (*Id*.)

### 3. Defendants' Reply (Doc. 44)

In response, Defendants reiterate their argument that, because all federal claims against Defendants are subject to dismissal, the Court should dismiss all remaining supplemental state law claims. (Doc. 44 at 6.)

### B.  Analysis

### 1. Excessive Force, Assault, and Battery Claims

The Amended Complaint alleges that Defendants violated Whitfield's right to be free from excessive force as guaranteed by the Louisiana Constitution. (*See* Doc. 33, ¶ 58.) The Amended Complaint also asserts that "Sims assaulted and battered the decedent, injuring decedent." (*Id*. at ¶ 63.)

The Fifth Circuit has stated that "Louisiana's excessive force tort mirrors its federal constitutional counterpart." *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515–16 (M.D. La. 2013) (citing *Deville v. Marcantel*, 567 F.3d 156, 172–73 (5th Cir. 2009)).  "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force." *Id*. at 515 (citing *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. App. 5 Cir. 1982)); *see also Taylor v. United States*, 1991 WL 280066 (E.D. La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").

Accordingly, Plaintiff's assault, battery, and excessive force claims are essentially state law corollaries of her § 1983 claims for excessive force. As such, the foregoing analysis of Plaintiff's § 1983 excessive force claims against Defendants in their individual capacities also applies to Plaintiff's state law claims for excessive force, assault, and battery. Plaintiff has stated

a viable claim against Sims for excessive force, assault, and battery; accordingly, Defendants'
motions as to these claims against Sims is denied. As previously discussed, Frazee and Sheriff
Travis did not use any force against Decedent. Sims is the only person who had any contact with
Plaintiff. As such, Sheriff Travis and Frazee cannot be liable for using excessive force. Plaintiff's
state law claims for excessive force are therefore dismissed with respect to Sheriff Travis and
Frazee.

### 2. Negligence Claims

Louisiana courts evaluate negligence claims using the duty/risk analysis. *Causer v. Ard*,
No. 18-779, 2019 WL 3849155, at *7 (M.D. La. Aug. 15, 2019). "The duty/risk analysis consists
of the following factors: (1) did the defendant owe a duty to the plaintiff; (2) was the duty breached;
(3) was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*,
was it a cause-in-fact of the harm which occurred; (4) was the risk, and harm caused, within the
scope of protection afforded by the duty breached; and (5) actual damage." *Id.* (citing *Williams v.
Domino's Pizza, Inc.*, 2001 WL 6724, at *4 (E.D. La. Jan. 2, 2001); *Roberts v. Benoit*, 605 So. 2d
1032, 1041 (La. 1991); *see also Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 698 (5th
Cir. 2011)). To impose liability, Plaintiff must prove all five factors. *Id.*

"[U]nder Louisiana law, a police officer has a duty to act reasonably under the totality of
the circumstances." *Perron v. Travis*, No. 20-221, 2021 WL 1187077, at *8 (M.D. La. Mar. 29,
2021) (citing *Mathieu v. Imperial Toy Corp.*, 94-0952, p. 10 (La. 11/30/94), 646 So. 2d 318, 325.
Given the Court's determination that Plaintiff has pled sufficient facts indicating that Sims did not
act reasonably under the circumstances surrounding the encounter with Whitfield, Plaintiff has
stated a viable negligence claim against Sims under Louisiana law. The Court finds that Plaintiff
has failed to state a negligence claim under Louisiana law against Frazee, however. The allegations

of general negligence set forth in the Amended Complaint are alleged in a broad, conclusory manner. The Amended Complaint lacks sufficient facts from which the essential elements of negligence against Frazee could be gleaned. The Court will therefore dismiss Plaintiff's state law negligence claim against Frazee.

### 3. Vicarious Liability Claim

Under La. Civ. Code art. 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment." *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 821 (La. 2000). Governmental entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer." *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009) (citing *Brasseaux*, 752 So. 2d at 815); *see also Bussey v. Dillard Dep't. Stores, Inc.*, 984 So. 2d 781, 784 (La. App. 1 Cir. 2008) ("[V]icarious liability [under art. 2320] applies to law enforcement employers as well." (citations omitted)). The Louisiana Supreme Court has "stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Brasseaux*, 752 So. 2d at 820 (internal citations omitted). Liability is

> predicated on whether the tortious conduct of the employee is "so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests."

*Id*. (quoting *LeBrane v. Lewis*, 292 So.2d 216, 218 (La. 1974)).

Here, Defendants apparently do not dispute that Sims was acting in the course of his employment with the EFPSO when the incident involving Whitfield occurred. Because Plaintiff

has stated a viable claim against Sims for negligence, there is a potentially culpable employee to serve as the basis for Sheriff Travis's vicarious liability. Therefore, Plaintiff has sufficiently stated a vicarious liability claim against Sheriff Travis under Louisiana law, and Defendants' motion on this claim is denied.

### 4. Failure-to Claims

La. R.S. § 9:2798.1, entitled "Policymaking or discretionary acts or omissions of public entities or their officers or employees," states:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties

La. R.S. § 9:2798.1 also states:

> C. The provisions of Subsection B of this Section are not applicable:
>
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
>
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

In *Hoffpauir*, a different division of this Court explained how Louisiana appellate courts have applied La. R.S. § 9:2798.1:

> In *Smith v. Lafayette Parish Sheriff's Department*, . . . the plaintiff alleged the Lafayette Parish Sheriff's Department hiring and retention policy was inadequate. *See* 874 So.2d 863 (La. App. 3 Cir. 2004). In *Smith*, a rape victim brought suit against the Lafayette Parish Sheriff's Department claiming that the Sheriff's hiring/retention policies were inadequate, after it was discovered that one of the department's detectives had raped her and multiple other individuals. *Id.* at 865. The court found that the sheriff's "hiring/retention policy was a discretionary act" and liability could not be imposed on the department or its officers for the application of that policy. *Id.* at 867.

*Hoffpauir v. Columbia Cas. Co.*, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013). The Court also stated:

> [T]he hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function. Like in *Smith,* the plaintiffs have failed to point to a Louisiana statute mandating a particular policy or procedure for hiring, training, supervising, or screening officers; and the court's review has also failed to uncover any relevant statute mandating a policy or procedure. Accordingly, the sheriff's department's hiring, training, retention, and supervision policy are discretionary functions, for which Louisiana Revised Statutes § 9:2798.1 grants the officers and the department immunity.

*Id.*

> The Fifth Circuit has also applied La. R.S. § 9:2798.1 in similar circumstances, explaining:

> The Supreme Court of Louisiana considers the immunity conferred on state public officials by this law to be "essentially the same as the immunity conferred on the federal government by the exception to the Federal Tort Claims Act (FTCA)." *Jackson v. State ex rel. the Dep't of Corrections,* 785 So.2d 803, 809 (La. 2001). Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy. *See Fowler v. Roberts,* 556 So.2d 1, 15 (La. 1990) (adopting the FTCA discretionary function test reiterated in *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S. Ct. 1954, 1958–59, 100 L. Ed. 2d 531 (1988)). Under part one, if the official has no alternatives, the exception does not apply. *Williams v. City of Monroe,* 658 So.2d 820, 828 (La. Ct. App. 2d Cir. 1995). Under part two, the court must determine whether, if the action involves selection among alternatives, the choice was policy-based. *Id.* An officer's use of policy-based discretion protects him from state tort liability.

> Chief Prator had a wide variety of options for training officers under his command; no law, regulation, or policy of the State of Louisiana explicitly directed his course of action. Further, his training and supervisory decisions are grounded in policy considerations; he had to assess the community's needs, contemplate the types of situations his officers would face, and ultimately reconcile his training decisions with the department's budget. Because his actions meet both prongs of the discretionary immunity test, Chief Prator is immune from the plaintiffs' state law tort claims.

*Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).

In this case, Sheriff Travis is a policymaker and in his discretionary decision-making capacity, trains and supervises deputies at the EFPSO. La. R.S. § 9:2798.1 applies to those decisions. *Skinner v. Ard*, No. 19-66, 2020 WL 699740, at \*10 (M.D. La. Feb. 11, 2020) (deGravelles, J.) (finding same as to the Livingston Parish Sheriff). Further, Plaintiff fails to demonstrate that an exception to La. R.S. § 9:2798.1 applies. While she contends in her opposition that Sheriff Travis was "fully aware" of Sims' "history and patterns of violating the law," and permitted him to stay on the force any way, this allegation is wholly conclusory and unsupported by the operative complaint. Consequently, Plaintiff has failed to demonstrate that Sheriff Travis is not entitled to immunity from her claims of negligent hiring, training, and supervision under La. R.S. § 9:2798.1.

## VI.    Leave to Amend

Federal Rules of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). However, "[l]eave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994 (citation and internal quotation marks omitted)). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." [*Jones*, 427 F.3d at 994] (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to

provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. and Indent. Co.,* 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Id.* (citation and internal quotation marks omitted).

*Id.*

In addition, the Fifth Circuit has made clear that "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.* (citing *Briggs*, 331 F.3d at 508).

Having carefully considered the matter, the Court will deny leave to amend and dismiss the defective claims with prejudice. As stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay. *Id.* (citation omitted). Here, Plaintiff had the benefit of the Court's ruling on Defendants' original motion to dismiss (Doc. 31), yet she failed to cure the deficiencies of the original complaint (Doc. 1). But more importantly, further amendment would be futile because no amendment can cure the above deficiencies.  As a result, Plaintiff will not be allowed leave to amend, and the defective claims will be dismissed with prejudice. *See Apollo Energy*, 387 F. Supp. 3d at 679 (denying leave to amend when plaintiff should have had notice of issue from court's ruling on original motion to dismiss, and when further amendment would be futile); *Skinner v. Ard*, 519 F. Supp. 3d at 321–22 (same).

## VII.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Rule 12(b)(6) Motion to Dismiss Amended Complaint* (Doc. 36) filed by Defendants Sheriff Jeff Travis, Deputy Houston Frazee, and Deputy Glen Sims is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that the following claims are **DISMISSED WITH PREJUDICE**: (1) Plaintiff's § 1983 claims against Defendants in their official capacities; (2) Plaintiff's § 1983 claims for excessive force against Sheriff Travis in his individual capacity; (3) Plaintiff's § 1983 claims for excessive force and bystander liability against Deputy Frazee in his individual capacity; (4) Plaintiff's claims for excessive force under the Louisiana Constitution against Sheriff Travis and Deputy Frazee; and (5) Plaintiff's state law negligence claims against Deputy Frazee and Sheriff Travis. In all other respects, the motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 31, 2022</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**